IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.    10-cv-03155-WYD-BNB

GONJI SKYFIRE

    Plaintiff,

v.

SERVICESOURCE, INC., and
SERVICESOURCE NETWORK,

    Defendants.

**ORDER**

**I.    INTRODUCTION**

This matter is before the court on three separate motions: 1) Defendant ServiceSource Inc.'s Partial Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) [ECF No. 55], filed October 4, 2011; 2) Plaintiff's Motion for Entry of Default Judgment [ECF No. 67], filed November 8, 2011; and 3) Defendant ServiceSource Inc.'s Motion to Set Aside Default Judgment [No. 106], filed January 25, 2012.

By way of background, the Plaintiff in this case, Mr. Gonji Skyfire, is a hearing-impaired individual who communicates via sign language.   Plaintiff's Second Amended Complaint at ¶¶ 12-14, [hereafter, "Amended Complaint"], [ECF No. 51], filed August 10, 2011.   As a program participant in the Department of Vocational Rehabilitation of the Colorado Department of Human Services, Plaintiff began working for

Defendant, ServiceSource Inc. (SSI) in Denver, Colorado, on SSI's government contract with the United States Air Force. *Id.* at ¶¶ 18-23. Mr. Skyfire alleges he experienced repeated demotions, non-selection, denials of training, refusal of a requested reduction in work hours, and that he ultimately lost his job because of his employer's discrimination against him because of his disability. Prior to his alleged termination, he filed a claim against SSI with the EEOC. *Id.* at ¶¶ 62.

A month after filing his claim with the EEOC, SSI called him to a meeting about the concerns he had reported to the EEOC. *Id.* at ¶ 64. An interpreter was provided at this meeting. *Id.* At a subsequent meeting to address Mr. Skyfire's tardiness and absences, Mr. Skyfire claims he was forced to either resign his position or sign a document which would dismiss his EEOC charge. *Id.* at ¶7 0-73. No interpreter was provided at the second meeting and Mr. Skyfire chose to resign. *Id.* at ¶ 70, 77. On March 3, 2010, Mr. Skyfire reported his termination to the EEOC, believing his termination was retaliatory and due to his disabilities. *Id.* at ¶ 79. On March 25, 2010 a formal charge of discrimination was filed with the EEOC detailing these allegations. *See* Partial Motion to Dismiss, Exhibit C, [ECF No. 55], filed October 4, 2011.

Mr. Skyfire filed this case against SSI on December 18, 2010, alleging three separate violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. *See* Complaint, [ECF No. 1]. He amended his complaint on February 4, 2011 to add claims pursuant to the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, *et seq.* Amended Complaint, [ECF No. 4]. After a hearing on August 10, 2011, Mr. Skyfire was granted leave to file a second amended complaint. *See* Minute Entry [ECF

No. 48]. The Second Amended Complaint, [ECF No. 51], which is now the operative complaint, was filed on August 10, 2011 and added claims against ServiceSource Network.

In his Amended Complaint, Plaintiff asserts claims against both SSI, and ServiceSource Network, and alleges failure to accommodate a known disability (Claim 1), disparate treatment (Claim 2), harassment/hostile work environment (Claim 3), and retaliation (Claim 4) in violation of both the Rehabilitation Act and the ADA. Plaintiff also alleges constructive discharge (Claim 5).

## II.   Procedural History

With respect to the three motions that are currently pending before me, the procedural history is as follows. SSI filed its Partial Motion to Dismiss, [ECF No. 55], on October 4, 2011, wherein it asks the Court to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction, raising among other things a failure to exhaust and the argument that ServiceSource Network it is not a separate entity from SSI and therefore lacks the capacity to be sued . Mr. Skyfire filed his Response to the Partial Motion to Dismiss, [ECF No. 65], on November 7, 2011, and SSI filed a Reply, [ECF No. 74], on November 23, 2011.

During this same time period, on November 7, 2012, Mr. Skyfire filed a Motion for Entry of Default as to Defendant ServiceSource Network, [ECF No. 63], and the clerk entered default as to ServiceSource Network, [ECF No. 66], on November 8, 2011. Plaintiff then immediately filed a Motion for Default Judgment as to ServiceSource Network, [ECF No. 67], which is now before me. Although the motion for default

judgment pertains to ServiceSource Network, SSI filed a Response to the motion, [ECF No. 83], on December 2, 2011, again arguing that ServiceSource Network does not a have the capacity to be sued as a separate legal entity. Mr. Skyfire filed his Reply to the Motion for Default Judgment, [ECF No. 96], on December 19, 2011.

I originally set a hearing on the Motion for Default Judgment for January 25, 2012. However, by Minute Order dated January 23, 2012, [ECF No. 103], I converted this to a motions hearing to hear argument on both the Motion for Default Judgment and SSI's Partial Motion to Dismiss, particularly with respect to the capacity issue. On the morning of January 25, 2012, just before the start of the hearing, SSI filed a Motion to Set Aside Default Judgment, [ECF No. 106], repeating many of the same arguments that ServiceSource Network cannot be sued in its individual capacity.

At the hearing, I heard argument from both parties regarding the capacity of ServiceSource Network in addition to argument on other jurisdictional issues related to exhaustion which were raised by SSI in the Partial Motion to Dismiss. I then ordered Plaintiff to file a response to SSI's Motion to Set Aside Default Judgment, which he did on February 3, 2012. *See* Plaintiff's Response to the Motion to Set Aside Default Judgment, [ECF No. 108], filed February 3, 2012. SSI filed its Reply, [No. 114], on February 24, 2012. Consistent with my request at the hearing, SSI provided me with a copy of the full deposition transcript of Bertha R. Parby, Senior Vice President of Human Capital and Employee Relations for SSI, whose testimony was relied upon by both parties at the January 25, 2012 hearing. I have reviewed the entire transcript in conjunction with my consideration of these motions. I will address each of the three pending motions in

turn; however, my analysis will begin with the issue of whether ServiceSource Network is a proper defendant with the capacity to be sued since this issue is raised in all three motions. Additionally, I must also address the threshold issue of whether SSI has standing to argue on behalf of ServiceSource Network.

### III. Motion To Dismiss

#### a. Capacity of ServiceSource Network to be Sued

In its Partial Motion to Dismiss, SSI argues that jurisdiction over ServiceSource Network is not proper under F.R.C.P. 17(b)(3) because it is not a separate entity from SSI and therefore lacks the capacity to be sued. Specifically, SSI claims that "ServiceSource Network" is merely a term used by SSI for administrative convenience to refer to various operations and contract sites throughout the U.S. *See* SSI's Partial Motion to Dismiss at 8 [ECF No. 55]. SSI asserts that ServiceSource Network's legal identity is coextensive with SSI's, making it incapable of being sued. SSI makes these same arguments on behalf of ServiceSource Network in both its Response to the Motion for Entry of Default Judgment, [ECF No. 67], and in its Motion to Set Aside Entry of Default Judgment, [ECF No.106].

In response, Mr. Skyfire argues first that SSI does not have standing to make this argument for ServiceSource Network. He also notes that ServiceSource Network was properly served by delivering a copy of the Summons and Second Amended complaint to Marilynn Bersoff, a ServiceSource Network Board member, on September 13, 2011. *See* Summons Returned Executed, [ECF No. 54], filed September 20, 2011. Mr. Skyfire also argues that ServiceSource Network *does* have the capacity to be sued under Fed. R.

Civ. P. 17(b)(3)(A) because Colorado permits suit against an unincorporated association in its common name and because he is seeking to enforce a federal substantive right *See* Plaintiff's Reponse at 12 [ECF No. 80] (citing Colo. Rev. Stat. § 13-50-105).

These issues were first raised in the context of SSI's Partial Motion to Dismiss pursuant to Rule 12(b)(1), which empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions are generally presented in one of two forms: "the moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). Where a party moves to dismiss under 12(b)(1) by attacking the factual basis of the complaint, a court may consider matters outside the pleadings, without necessitating conversion into a motion for summary judgment.[1] *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992). Where the motion constitutes a facial attack on the allegations of subject matter contained in the complaint, I must presume all of the allegations contained in the amended complaint to be true. *Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir. 2002). Ultimately, "[t]he burden of establishing subject matter jurisdiction is on the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.,* 518 F.3d 1186, 1189 (10th Cir. 2008) (citations omitted).

---

[1] Many of the affidavits and other documents submitted to the Court on the issue of capacity have been attached by both parties as exhibits in the pleadings on the Partial Motion to Dismiss as well as the pleadings relevant to the Motion to Set Aside Default Judgment. Since I am permitted to consider matters outside the complaint, I will rely on these exhibits as well.

Under Fed. R. Civ. P. 17(b)(3), capacity of an association to sue or be sued is determined by the law of the state in which the federal district court is located, except that "a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or law." In Colorado, an unincorporated association has the capacity to sue or be sued under its common name. *See* Colo. Rev. Stat. § 13-50-105 (2011). Regardless, because Plaintiff seeks to enforce a substantive right under the ADA and the Rehabilitation act, he is permitted to sue an unincorporated association under federal law.

Federal courts have used various definitions for an unincorporated association including, "a body of persons acting together and using certain methods for prosecuting a special purpose or common enterprise" and "a collection of persons 'created and formed by the voluntary action of a number of individuals in associating themselves together under a common name for the accomplishment of some lawful purpose.'" *Law v. National Collegiate Athletic Ass'n*, 167 F.R.D. 464, 474 (D. Kan. 1996), *vacated on other grounds sub nom, University of Texas v. Vratil*, 96 F.3d 1337 (10th Cir. 1996); *see also Johnson v. Chilcott*, 599 F.Supp.224, 228 (D.Colo. 1984) (explaining characteristics of an unincorporated association generally include by-laws governing its organization, a stated purpose for existence, and a membership which provides for its continuity).

Although SSI insists that ServiceSource Network is merely a moniker used for branding purposes, Mr. Skyfire has presented evidence that includes the mission statement of ServiceSource Network from its 2010 Annual Report, in which

ServiceSource Network declares its mission is "to provide individuals with disabilities an exceptional service delivery experience through innovative and valued employment, training, rehabilitation and support services." Plaintiff's Response to the Partial Motion to Dismiss, Exhibit 4 at 3, [ECF No. 78]. Additionally, its membership consists of five affiliate organization, one of which is SSI. *Id.* at 5.

The evidence also shows that ServiceSource Network had its own governing structure, including a Senior Executive Team and Board of Directors. *Id.* at 4-5; *see also* Plaintiff's Response to the Motion to Set Aside Default, Exhibit 1 at 3-8 and Exhibit 3 at 1-8 [ECF No. 108]. The 2010 Annual Report and website also identified ServiceSource Network's headquarters in Alexandria, VA, which is distinct from the primary addresses of any of its affiliate companies. Plaintiff's Response to the Partial Motion to Dismiss, Exhibit 4 at 41, [ECF No. 78]; Plaintiff's Response to the Motion to Set Aside Default, Exhibit 1 at 9, [ECF No. 108]. Additional evidence indicates that ServiceSource Network had its own website, letterhead, it distributed an employee handbook to the affiliate companies, it published an annual report, it adopted an EEO policy statement, and it managed personnel and IT services for its affilitated corporations, including SSI. *See* Plaintiff's Response to Motion to Set Aside Default Judgment, Exhibits 1-10, [ECF No. 108].

The only evidence that SSI has submitted to refute Plaintiff's assertion is the testimony and affidavit of Ms. Parby, SSI's Senior VP of Human Resources, wherein she states "ServiceSource Network" was merely a term used for branding and marketing purposes, that it "does not independently own any assets, does not employ any workers,

and does not have a board of directors." SSI Partial Motion to Dismiss, Exhibit 2 at 1, [ECF No. 55]. Further, SSI asserts an unincorporated division of a corporation lacks legal capacity to be sued. *Id.* at 8 (citing *U.S. v. ITT Blackburn Co. Div. of ITT*, 824 F.2d 628 (8th Cir. 1987). While this proposition is true, SSI's reliance on this rule is misplaced. In *ITT Blackburn*, an unincorporated division of a parent company was held to lack capacity to be sued. 824 F.2d at 629. Here, ServiceSource Network itself appears to be the parent organization, while SSI is presented as an affiliate. Therefore, ServiceSource Network is not an unincorporated division of SSI, but rather an unincorporated association.

Accordingly, based on my review of all the evidence submitted by the parties, Plaintiff has effectively demonstrated that ServiceSource Network is an unincorporated association within the meaning of the federal definition. Thus it is a properly named defendant in this matter. To the extent SSI bases its Partial Motion to Dismiss on the capacity of ServiceSource Network to be sued, the motion is denied.

### b. Standing

Although I have determined that ServiceSource Network has the capacity to be sued as an unincorporated association pursuant to Fed. R. Civ. P. 17(b)(3), it has not made an appearance in this litigation. Rather, SSI has asserted various arguments on ServiceSource Network's behalf. In other cases where a defendant has urged dismissal of claims based on its incapacity to be sued, that motion was brought by the defendant itself. *See e.g. Testa v. Janssen*, 482 F.Supp.1195, 1200 (W.D. Penn. 1980) (motion to dismiss for want of capacity filed by the particular defendant contesting its own capacity);

*see also Fuller v. Woodland Racing*, 1994 WL 171408 (D. Kan. April 7, 1004) (defendants Woodland Racing and Woodlan Kennel Club filed a motion to dismiss on their own behalf arguing lack of capacity to be sued); *Bowles v. City of Mansfield*, 2009 WL 6903813 at *9 (N.D. Ohio, July 10, 2009) (same).   Accordingly, ServiceSource Network must argue on its own behalf.   SSI has not demonstrated the existence of a relationship between itself and ServiceSource Network such that SSI has standing to argue on behalf of ServiceSource Network.

### c. Exhaustion

With respect to exhaustion, I first note that based on my analysis above, SSI lacks standing to argue that all of Mr. Skyfire's claims against ServiceSource Network should be dismissed for lack of administrative exhaustion because only SSI, and not ServiceSource Network, was named in Mr. Skyfire's EEOC complaint.   Therefore, I need not address the merits of whether the scope of the EEOC complaint also encompassed claims against ServiceSource Network based on Plaintiff's "identity of interest" argument.

Turning to the argument SSI asserts on its own behalf, SSI argues that Mr. Skyfire is administratively barred from asserting his "regarded-as" disability discrimination and constructive discharge claims because he only alleged that SSI discriminated against him on the basis of an actual disability, and that it actually terminated him.   Further, SSI asserts that Mr. Skyfire failed to set forth any factual allegations in his charge that would provide the agency with sufficient information to evaluate these claims.

In response, Mr. Skyfire argues that the scope of his EEOC claim was broad enough to include the "regarded-as" discrimination claim and the constructive discharge

-10-

claim because the facts alleged in the EEOC charge were sufficient to put the agency on notice.  *See Jones v. UPS*, 502 F.3d 1176 (10th Cir. 2007).   Mr. Skyfire also notes that his claims are premised on the Rehabilitation Act in addition to the Americans with Disabilities Act as amended, and exhaustion is not required under the Rehabilitation Act. Specifically, Mr. Skyfire argues that Section 504 of the Rehabilitation Act controls, because he is suing SSI as a federal funds recipient—not a federal employer—and this remedial scheme does not require exhaustion.

### i.   ADA Claims

Exhaustion of administrative remedies under the ADA is a jurisdictional prerequisite to suit.   *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002); 42 U.S.C. § 12117(a).   This requirement serves the purpose of giving the agency the information it needs to investigate and resolve the dispute between the employee and the employer.  *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993).   As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit which were not included in the underlying EEOC charge.   *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).   Rather, "each discrete incident of [discrimination or retaliatory action] constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted."   *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).

To determine whether Mr. Skyfire has exhausted administrative remedies for the "regarded-as" disability claim and constructive discharge claim, I must determine the scope of allegations contained in the EEOC charge.   *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 1997).   That is because "[a] plaintiff's claim in federal

court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.*; *see also Jones v. Sumser Ret. Vill.,* 209 F.3d 851, 853 (6th Cir.2000) ("[T]he facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim."). The court is to "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Jones*, 502 F.3d at 1186.

Furthermore, the EEOC regulations do not require that Mr. Skyfire delineate his legal theories in the charge. Rather, "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b) (incorporating § 1601.12(a)(3) which requires "a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.").

In the case at hand, it is undisputed that Mr. Skyfire checked the "retaliation" and "disability" boxes and also provided detail about the nature of the discrimination and his termination. Ex. 3 to Mot. to Dismiss at 1. He describes his demotions, instances of non-selection, reduction of hours and denial of training. *Id.* Mr. Skyfire also explains he had "doctors notes regarding [his] medical conditions" implying that SSI was aware of his medical issues. Finally, he explains that "on February 23, 2010, I was terminated after refusing to sign a document that would nullify my EEOC discrimination complaint." I find that the foregoing should have triggered an inquiry into whether SSI viewed him as

disabled. *See Jones*, 502 F.3d at 1186-87. In other words, an investigation into whether SSI took action against Mr. Skyfire because it regarded him as disabled "'can reasonably be expected to follow the charge.'" *Id.* at 1187 (quotation omitted). Mr. Skyfire's claim of "regarded-as disabled" discrimination is therefore within the scope of the charge and I deny Defendant's motion to dismiss as to this issue.

The constructive discharge claim is a closer issue. Although Mr. Skyfire did not use the word "constructive" to describe his termination, his words can be construed to reveal that he understood that he either had to sign the document nullifying is EEOC complaint or he would be terminated. Accordingly, an investigation of the circumstances of his termination, constructive or otherwise, could "reasonably be expected to follow the charge." *Jones*, 502 F.3d at 1187 (quotation omitted). Given that I must "liberally construe" EEOC charges, Mr. Skyfire's constructive discharge claim is also within the scope of the charge and Defendant's motion is denied as to this issue.

### i. Rehabilitation Act Claims

Under the Rehabilitation Act, federal employees may assert claims against federal employers pursuant to Section 501. *See* 29 U.S.C. § 791. The remedial scheme for those claims is set for in Section 505(a)(1), which incorporates the remedies, procedures and rights set forth in Title VII. 29 U.S.C. § 794a(a)(1). Thus, employees asserting claims against federal employers pursuant to Section 501 must meet the exhaustion requirement. *Id.*; *see also Ryan v. Shawnee Mission Unified School District No. 512*, 437 F.Supp.2d 1233, 1253 (explaining statutory scheme). However, a suit under Section 504 of the Rehabilitation act, against an employer who receives federal

funds rather than a federal employer, does not require exhaustion.  *Ryan,* 437 F.Supp.2d at 1254.   Section 504 of the Rehabilitation Act bars disability discrimination in a federally funded program, but it incorporates the rights, remedies, and procedures, set forth in Title VI, which does not require exhaustion.    *See* 29 U.S.C § 794(a) and 794a(a)(2).   Accordingly, exhaustion is not required for suites under § 504 of the Rehabilitation Act against a federal funds recipient.   *Ryan,* 437 F.Supp.2d at 1254; *see also Pushkin v. Regents of Univ. of Colo.* 658 F.2d 1372, 1380-82 (10th Cir. 1981) (same).

SSI describes itself as a not-for-profit program that contracted with the federal government to provide services to the U.S. Air Force.   Partial Mot. to Dismiss at 2, [ECF No. 55].   Plaintiff has included entries from USASpending.gov to show SSI has been the recipient of federal funds.[2]   *See* Exhibit 1 of Plaintiff's Amended Response [ECF No. 78-2].   Therefore, Plaintiff is permitted to proceed with its claims against SSI under Section 504 of the Rehabilitation Act without exhausting administrative remedies.

**IV.    Motions Pertaining to Default Judgment**

Entry of default judgment is committed to the sound discretion of the district court. *Creative Tile Marketing, Inc. v. SCIS Intern., S.r.L.*, 922 F. Supp. 1534 (S.D. Fla. 1996). In determining whether to award a default judgment, the Court may consider (1) the prejudice to the plaintiff if the default is not granted; (2) the merits of plaintiff's claims; (3) the sum of money at stake; (4) any possible dispute over material facts; (5) whether the defendant's delay was the result of excusable neglect; and (6) the strong policy of

---

[2] Although I will not address the merits of SSI arguments asserted on behalf of ServiceSource Network, I would note that Plaintiff has failed to provide any evidence that ServiceSource Network was also a recipient of federal funds.

favoring decisions on the merits.  *American Cyanamid Co. v. America Baolishi, Inc.*, 2000 WL 1006556 (N. D. Cal. 2000).

To set aside an entry of default, good cause must be shown pursuant to Fed. R. Civ. P. 55(c).   The good cause required to set aside an entry of default, before a default judgment has issued, poses a lesser standard for the defaulting party than the excusable neglect requirement which must be shown for relief from judgment under Rule 60(b). *Dennis Garberg & Associates, Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n. 6 (10th Cir. 1997).

Although ServiceSource Network has not made an appearance nor participated in this litigation, I will not enter default judgment at this time.   While Plaintiff's have requested a hearing on damages, such a hearing would be more appropriate at the conclusion of the litigation against the non-defaulted defendant SSI.   At this time, the damages are not a sum certain and it is possible that some material facts may be in dispute.   Delaying the entry of default judgment will not prejudice the plaintiff at this time. Moreover, it will allow me to consider the merits of Plaintiff's claims as it proceeds against SSI.   Therefore, Plaintiff's Motion for Entry of Default Judgment is denied without prejudice.   Additionally, for the reasons stated above, SSI does not have standing to file a motion to set aside the entry of default as to ServiceSource Network, therefore, its motion is also denied.

**V.    CONCLUSION**

Based on my analysis above, ServiceSource Network will remain a party in this litigation as it has the capacity to be sued under federal law as an unincorporated

association.   I also find that SSI lacks standing to file any motions on behalf of ServiceSource Network.   Furthermore, the scope of Mr. Skyfire's EEOC charge encompasses his "regarded-as" disability discrimination claim and his construction discharge claim and he is not required to exhaust his administrative remedies for his Section 504 Rehabilitation Act claims.   Accordingly, it is

ORDERED that Defendant ServiceSource Inc.'s Partial Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) [ECF No. 55], filed October 4, 2011 is **DENIED.**   It is

FURTHER ORDERED that Plaintiff's Motion for Entry of Default Judgment [ECF No. 67], filed November 8, 2011 is **DENIED WITHOUT PREJUDICE.**   Plaintiff is granted leave to re-file this motion at the conclusion of the litigation against the non-defaulted defendant, SSI.   It is

FURTHER ORDERED that Defendant ServiceSource Inc.'s Motion to Set Aside Default Judgment [No. 106], filed January 25, 2012, is **DENIED.**

Dated: September 20, 2012

                                                         BY THE COURT:

                                                         s/ Wiley Y. Daniel
                                                         Wiley Y. Daniel
                                                         U. S. District Chief Judge